Good morning, Your Honors. Davina Chen for Mr. Davis and Mr. Okafor. These cases present the question whether the Commission exceeded its authority when it amended Policy Statement 1B1.10 to prohibit courts from reapplying downward departures or variances that they had already decided were necessary as part of their constitutionally assigned function to sentence defendants to comply with the statutory purposes of sentencing. To answer that question, meaning the question whether the Commission exceeded its authority, this Court must look to the source of the Commission's authority to promulgate policy statements and its guiding principles. The source of the authority is clearly 28 U.S.C. 994U, but 28 U.S.C. 994U has no guiding principles, so we need to look more. Can you just maybe take one step back and tell us what you think, if we got to the merit in Davis, which I have some questions for you about, Munis, on that, but if we get to the merits in these cases, what of your arguments are left or after our decision in Tercero? Well, Tercero, I think, doesn't do what the Court needed to do to answer the question. So, to show you the merits of the decision, I think, is to say that it's not the Court's fault. Does it answer the question in your case, even if it doesn't answer it correctly? It does seem, I can say it, it does seem to purport to answer the question. But if you look at the briefs in that case and you sort of parse the Court's argument, it did not look at any of the guiding principles. It looked only to 994U. So it said, 994U says they can do it, so they can do it. So it did not address whether the Commission exceeded its scope under 994U in looking   not address whether the Commission exceeded its scope in light of the challenge that Mr. Davis is making. But are we free to depart from its holding simply because our colleagues weren't thorough enough or the lawyers in front of them weren't thorough enough? On its face, it appears to answer the question you pose in this case, does it not? On its face, it does appear to answer the question I pose. I would concede that. But it did not the challenges that Mr. Davis presents were not present in that case. No one made the arguments that Mr. Davis is making. So it's not so much that they resolved the challenges. They issued a sweeping holding that if it bound this Court would, in fact, demolish my argument. But it didn't, in fact, address the arguments that Mr. Davis made. Let me try this a little bit differently. If we were to accept your argument today and publish an opinion saying what you want us to say, would we be necessarily be overruling to Sarah? No, I think it would say something like inter show this Court decided that 1B1.10 did not conflict with the Fair Sentencing Act, but it did not fully resolve whether it conflicted with the Sentencing Reform Act. Mr. Davis does not argue that 1B1.10 conflicts with the Fair Sentencing Act. He argues that it conflicts with the Sentencing Reform Act. And nowhere into Sarah do they even address the guiding principles of the Sentencing Reform Act. That's the statutory purposes of sentencing, 3553A2 factors. They know where there's no limiting principle inter show. Inter show, they say 994U just lets the commission do whatever it wants to do. But it doesn't appear that it was presented with the question that Mr. Davis asks, which is, well, if the commission, can the commission do that? Can the commission use its 994U power in a way that it's wholly untethered from the statutory purposes of sentencing, 3553A2, when 994A2 specifically requires that the commission promulgate its policy statements consistent with 3553A2? Tertiaux does not even address that question. Tertiaux also does not address the question of whether the commission can use 994U in a way that's inconsistent even with 3582C2. As the Supreme Court ruled in Dillon, and as this court ruled in Fox, 3582 is a limited proceeding. All you can use a 3582 proceeding to do is to change a part of a sentence that was affected by a retroactive guideline amendment. In this instance, the commission used 994U to amend 1B1.10, which requires to do something totally different. Which is to require the district court to change a part of its sentence that is completely unaffected by the retroactive guideline amendment. So if the commission had said, well, someone is not entitled to a 1B1.10 reduction if, in their first sentence, the court already gave them a downward departure based on the crack disparity, that would have been consistent, right? Because, and that appears to be what the commission was trying to do when it issued its proposals for its amendment. That would have been perfectly consistent because we have a statutory change which takes care of, or purports to take care of, the crack and powder disparity. And if a district court already took that into consideration, then someone can't get a double reduction. But that's not what the commission did. The commission said. But are we faced with the fact that the previous version of the guideline policy statement did essentially what you are arguing for, and they changed it? Right. And I don't believe that they can change it. That's your argument. It's not that they didn't. I thought I heard you say that that's what they intended. They intended the result you're arguing for. And it seems to me it's very clear that the consenting commission didn't. I'm sorry. That's not what I meant. What I meant was that when they issued the request for, when they issue policy statements, they are not required to follow the administrative APA. But they do sometimes sort of ask for recommendations. So when they issued in the Federal Register their request for recommendations, it appeared that that's what they were trying to resolve, because all of their recommendations had to do with individuals who had been granted departures based on the crack powder disparity. But the guideline they ended up, the policy statement they ended up promulgating does nothing like that, right? Assuming they had the power, which you're arguing they didn't have the power to promulgate that guideline, but if they did have the power to promulgate it, we shouldn't go past its text to interpret it, should we, if its text is clear? Assuming. Well, now I think you, what I hear you saying is, look, this guideline seems to hurt my client on its face, but it's not really what they intended to do. No, no, that's not what I'm arguing. I'm sorry, I've been unclear. Yeah, so your point, I take it, is that Congress didn't intend them to be able to do this. Exactly. Doesn't Dillon, doesn't Dillon foreclose that argument to you? I don't think so, because I think Dillon was quite clear that the text and structure of 3582C2 makes it clear that 3582C2 is a limited proceeding for a very specific purpose. And so in Dillon, the 1B1.10 amendment they were addressing was the 1B1.10 amendment, where the commission said, a 3582C2 proceeding is a limited proceeding. It is not a resentencing. You can't have Booker variances. You can't have new departures. So in interpreting that particular amendment, the Supreme Court said, well, that's exactly what a 3582C2 is. And then this circuit in Fox went even further and said, well, the commission did exactly what they're supposed to do. They limited 3582C2 proceedings to their appropriate purpose. Well, but then we have to, I know it's different, but then we have to Cero, which seems to me to say that Dillon's logic requires the same result in the situation before us. I agree that that's what Tercero appears to say. And I agree that I have a very hard row to hoe to say. And you can, if this comes out wrong, I suppose you can always try to persuade the court and bank. But I'm trying to figure out whether or not we're even free to adopt your argument, no matter how compelling it might be, given that Tercero seems, even though it doesn't discuss all of your arguments, to resolve this case on its face. Well, Tercero's only discussion of Dillon is a question of whether, let's see, there's a couple of discussions of Dillon, whether you're bound by 1B1.10. So that's the first time they mentioned Dillon. And that's in the paragraph that says, Tercero urges us to conclude, right? So that, I don't think, has any effect on our argument. Because I'm not saying that this court isn't bound by 1B1.10. I'm just saying that 1B1.10 is an unlawful exercise. Well, what about the next paragraph? OK. So then the next paragraph, the only mention of Dillon in the next paragraph is a mention where Dillon explains that 3582C2 is a very limited proceeding, right? It does not authorize sentencing or resentencing. Instead, it provides for the modification of a term of imprisonment by giving courts the power to reduce an otherwise final sentence. Well, now, and I think you're doing a fine job of parsing. But what about the first sentence in the next paragraph? Nor does section 1B1.10 conflict with the purpose of the guidelines. She cites only. I know. She may be wrong. She may be wrong. But isn't that a flat holding in that case? Sometimes our colleagues make mistakes. But aren't they binding on this? I don't mean the judge. I mean tonight's Tercero. I would go back a couple of paragraphs. And it says, Tercero doesn't argue that the rabbi's version conflicts with the text of the FSA. She contends that section 1B1.10 contradicts Congress's general intent in passing the Fair Sentencing Act. And then you get to the conclusion of the court, which is that argument fails. Yeah. She rejects that argument. That's not my argument, right? Your argument is not that it violates Congress's intent? In passing the FSA. In passing the FSA. My argument is that it violates Congress's direction in passing the SRA, the Sentencing Reform Act. It seems to be that Tercero's argument was focused on whether or not the amendment violated the Fair Sentencing Act of 2010. Whereas my argument is that it violates the Sentencing Reform Act, the originating principle of the Sentencing Commission. If we said that the commission could do anything it wanted under 994U, it could literally do whatever it wanted. It could say, you can't have a 3582C2 reduction unless the court recalculates your criminal history as a sixth and takes away all your mitigating reductions, takes away your minor role, takes away your safety valve. There is no principle difference between that scenario and this scenario. Can I ask you, just because we've consolidated these two cases, on Mr. Tercero's case and Mr. Okafor's case. Mr. Okafor has a much more difficult argument. Yes, and I was just going to ask you about that. Am I right in thinking that this amendment didn't change the base level for somebody who convicted of the amount of cocaine that he was convicted of possessing? That's right. So even if you're right in Davis, does that help Mr. Okafor at all? Well, if I were right in Davis and this Court were to hold that 1B, which is 1.10, exceeded the commission's authority, I would ask for a weigh-in in Okafor, because that was a very principal part of Judge Morrow's holding, was that even if it did, I'm bound. So I would think that she would have another opportunity. But what power would she have to reduce the sentence if Amendment 750 didn't touch this circumstance? Where would that power come from? Well, what happened in that particular case, and I remember it because it was when I first started at the office, is that she found that he couldn't possibly have foreseen that it was this crack-powder mixture, and so she sentenced him based on a lesser amount of crack. So my argument would be that she would have the opportunity. She changed the base level. She did. That's what you think. That's what your argument turns on you. She says she didn't, but I would like for her to have another opportunity to look at that. She didn't change and say, well, I'm going to sentence you for a lesser amount. She said, I'm going to depart downward. The amount I start with is the major amount. That's correct. And your argument depends on the court making a finding that it really wasn't made, namely that I'm sentencing on the basis of a much less than 2 kilograms. That's correct. That's correct. So for Mr. Okafor, it would really just be a remand for her to think about it again. His is much more difficult. Let me ask you just a couple of questions about Mootness and Davis. So first off, if I look at 3582c2, it just authorizes the court to do something with respect to the term of imprisonment, nothing more, right? Right. And Mr. Davis is out of confinement, so there's nothing that the court could possibly award him in the 3582c2 proceeding, right? Correct. Your argument as to why this isn't Moot is because there's this possibility in some other proceeding under 3583e2 that the term of supervised release could be reduced? Yes. Go make all these arguments over in that proceeding then. Don't waste our time making them here, because there's no relief he can get in this particular proceeding. Well, when we filed our appeal, he was still in custody, and he probably would have still been in custody if there were extensions that were granted, et cetera. But this Court has held repeatedly that that does not moot an appeal. Yes, we can go forward and we can do that. But in terms of Mootness, the government bears a burden, a very heavy burden to show that some intervening event created a situation where this Court has no power to grant any effective relief. No, because the plain text of 3582c2 restricts the authority of the court to just do something with respect to the term of imprisonment. I understand that. But in Mujahid, which was a 2241 proceeding in which the sole question was whether or not the Bureau of Prisons had properly calculated good time credits, and that proceeding was in the District of Oregon, and the guy was on supervised release in the District of Alaska, and, in fact, the guy was already back in prison for violating his supervised release. In that court, in that case, this Court held that the appeal on the 2241 was not moot. That is much further removed than this case. I mean, that is the question. So that's a good argument for us following our prior precedents. Yes. Strictly. 3582c2 does not authorize a reduction in the term of supervised release. Right.  3583e2 does not authorize a reduction in the term of supervised release. Well, I think that in Gunderson and in the – They misspoke. That – the text plainly says you can relax the conditions, but you can't do anything with respect to the term. I'm in a very odd position of arguing that we should strictly follow our precedents in one set of cases and not so strictly in the other. You're right one of the two times. We just have to figure out which. All right. Well, put that aside. Because I just am totally unpersuaded on just the textual analysis. But let's assume that we strictly followed Gunderson and Mujahid. You still need to get over the government's argument that there really is a mandatory minimum, unvariable four-year term of supervised release. And you get around that only by that little snippet of legislative history you've given us? No, actually, I get behind – around it because no court has ever held that a court could not reduce a period of supervised release even when it was mandatorily imposed. The only court to have addressed that was Spinelli in 1994, and every other court just follows that. I mean, I did give you a letter that was – that was prepared by the Office of General Counsel. And that dealt with an E-1 termination, right? Not an E-2 – Yes, it did. E-1 termination doesn't help you because in Gunderson we said that's just – it's all premature. He hasn't served a year of supervised release yet, right? But the principle is the same. So you think Spinelli survives the change in the statute? I think so. If you look at the legislative history of that statute, they were trying to address a circuit conflict, but it was a totally different circuit conflict. The circuit conflict that they were addressing was what is the maximum term, whereas this is what is the minimum term imposed. And no court has ever said that if there's a minimum term imposed, you can't later reduce it. There's no court that's held that. Well, that's – yeah, okay. Because E-2 – yeah, E-2 does not authorize a reduction in term. Or E-1. E-1. There's no court that has – Well, I don't even think – I'm going to ask the government. The government seems to think that you can still get an E-1 termination, notwithstanding the mandatory minimum of four years. Well, I'd be interested to hear what the government has to say about that. Well, I want to know. But let's – we'll give you a couple minutes for a vote. Thank you. Thank you very much. May it please the Court, Joshua Klein for the United States. Not only are appellant's challenges to the Section 1B1.10 substantively meritless, as every court to have considered the issue has held, but Davis's challenge is also that the majority of courts have held, including two prior decisions by this court and published decisions by the Second and Fifth Circuits, and additional unpublished decisions by the Fourth and – So let's assume that the rest of the world thinks these cases are – tell me why under Mujahid – that's probably the way it's pronounced – this case isn't alive. Right. Let me – let me give you several clear distinctions between this case, a 3582 C2 proceeding with a mandatory – statutory mandatory minimum supervised release, and the Ninth Circuit prior case. Okay. So do me a favor on this, because I think there's two issues that I'm interested in. The first one, I understand your argument that you've got a mandatory – a mandatory term here of supervised release. Put that aside for a second. If we didn't have a mandatory term of supervised release, would we be governed by Mujahid? No, Your Honor, you still wouldn't be, because – let me put it – let me put it this way. Because they're two separate arguments in my mind. Right. So as Judge Watford mentioned, Mujahid says that a – an appeal based on 3583 E1 early termination is premature before the one year, and that was totally without regard to mandatory minimums. So it's – that's the thing. So in Mujahid, there was the possibility, they said, of a lesser – lesser term when there's a resentencing. And 2241, if there is a resentencing, actually allows a complete resentencing, as long as there's the – as long as there's the jurisdiction. So there could have been a resentencing on supervised release as well. The second point is – and I want to make this clear – the government does not believe that an E1 early termination is permitted where there's a mandatory minimum supervised release term, and I will explain the reasons for that. But even if there was that possibility, that would still – that's still a differentiating factor. The fact that Congress has seen fit to impose what, in Appellant's case, they'd still have to concede is a presumptive four-year mandatory minimum would certainly be a heavy factor weighing against termination at the one-year mark or even the two-year mark. And so – so it means that there's more and more time between when the Court could make its reduction – could make its early termination decision, which, under statute, has to be based on the conduct of the defendant. You need to be able to do that. And I think that's a good point, and I think that's a good argument, and this – had this case been coming to us on a clean slate, I don't – I kind of think I would read the statute exactly the way Judge Watford suggests. My question is, doesn't the reasoning of our prior cases comport with the Appellant's argument here? The reasoning of those cases is, well, there's a chance that something might happen in the future if this is reduced, and that's good enough for us. Assume that's dead wrong, as I asked your opponent to assume about the decision you like, Terzaro. How do we get around them? Your Honor, even if those cases – let me say at the outset, the Gunderson and Mujahid cases are in serious tension with the Supreme Court's Spencer v. Chemnitz. Yeah, but we're stuck – we're stuck with them. So having said that, in Spencer v. Chemnitz, Justice Scalia's opinion is where – where the Supreme Court's mootness decisions on people who have served their term comes from. Now, having said that, given that they're in serious tension, this Court need not and should not – and I would say, frankly, they're wrong under Spencer – that they – this Court should not extend them into a new context where there are serious differentiating principles. Here's the third difference, okay? A case like Mujahid was a good-time credits case. The Petitioners were challenging the formula by which BOP calculates good-time credits. If the Court of Appeals strikes that formula and says, here's a new formula, there is a determinate amount that the district court on remand would have said the Petitioner over-served his sentence. Instead of it being 15 percent reduction, it should have been 18 percent reduction. Instead of compounding at this rate, it should have compounded at that rate. Here, even if this Court were to hold that the district court had the ability under 3553C2 to reduce the sentence because it struck 1B1.10, et cetera, Section 3552C2 is a two-step process. You don't automatically get a reduction, unlike recalculating good-time credits with the new formula. The district court still has to say, as a matter of my discretion, considering the factors in 3553A, which is required under the C2 reduction part, it says you have to consider those factors. And exercising my discretion, given the record as a whole, I now think that the defendant should have served less time. I would have reduced. Well, we might have to remand if we really thought it was wrong. If we thought the district court never got to exercising his discretion because it didn't think it had any, and we conclude that's wrong, we're going to remand and let him exercise his discretion. I mean, I agree it's kind of a hypothetical exercise. But if you — if the case isn't moot, that's one thing you might have to do if your opponent won on the merits. Well, Your Honor, let me just say that I think that only compounds the problem, because then you're having the district court issue a purely hypothetical decision that if I had had the opportunity, then I would have issued it. That's right. To get to the point where somebody can say, I served longer than I should have. And let me say two things about that. First of all, another reason this case is moot is because this whole exercise that the appellants are asking you, that Davis is asking you to engage in, is completely collateral. If the appellant is allowed, which we contest, to seek an E-1 early termination, they can make all the same arguments at that point. My imprisonment was too long. It was unjust. Under that proceeding, and they wouldn't even have to show that this — that there was jurisdiction to reduce the sentence. They could just say, I'm sorry, finish. And they could just say — I mean, I think, frankly, that they could even say, if they're allowed to make the argument at all, they could say it in all kinds of circumstances where a C-2 reduction is flatly prohibited. They could say even the mandatory minimum was too long. But couldn't Mujahid do the same thing? Couldn't Mujahid have gone in and said, you know, I didn't go back to the judge and seek resentencing, but I can show you that I should have been out of jail much earlier, and I was very unjust. I remained in there too long because I didn't get the appropriate amount of good time credits. So please give me an early termination. It's the second — I understand that the first step in the process is slightly less speculative than the first step in Mujahid. But I read Mujahid as standing for the principle that the mere possibility that a judge could reduce your term of supervised release later is enough to — is enough to unmoot — is enough to keep a case from being moot. And, Judge Hurwitz, let me explain why you can't extend mere possibility language into this new context. First of all, it's not mere speculation that — it's not slightly less likely that there would be a difference. The difference between a determinate formula and a defendant asking now for the mandatory minimum. No, I understand precisely what you're saying. You don't need to re-argue the side — the sentencing side. My problem is when you get to the other side, which is am I going to — am I going to modify your term of supervised release, we're all plainly guessing. I mean, a judge could say, well, yeah, you got too few good time credits. Should have got to me earlier, but I gave you the term of supervised release. I wanted to, and I'm not going to change it. I mean, it's pure speculation at step two, and yet for some reason our circuit thinks that keeps the case alive. Why — so I — and you can move on to your other argument about why this guy's sentence can't be reduced at all. Right. In this case. But as to that, I just don't find the larger probability that your sentence might be reduced under moot jaheed to be a — to really relate to mootness. And let me say, Your Honor, you have to follow the holding of moot jaheed and prior precedent. You don't need to extend that holding to new contexts. And let me — let me explain why that's wrong under Spencer v. Kemna to say mere possibility where it's not a determinant formula and where there's the possibility — where there's this heavy weight of the mandatory minimum supervised release term that the Court would have to consider, why that should not be extended. Spencer v. Kemna says, look, Justice Scalia says, the reason why we say it's not moot to challenge a conviction when the prisoner is out of prison and serving and under no disabilities whatsoever is because we think that it is overwhelmingly likely that even if he's not on parole, even if he's not in prison, he is — he has professional consequences, he has, et cetera. He uses — I think it's likely and almost — he uses terms about there being such a high probability. And so, Your Honor, have — you know, a determinant sentencing difference is one thing, but you should not go — you should not extend this and further deepen the rift with Spencer v. Kemna and not only persist, but really extend and deepen previous errors. You don't think a distinction can be drawn between the fact that those other two cases involve 2241 petitions and this involves a 3582 C-2? I think it absolutely is a distinction, Your Honor, because — Well, you argue that in your many — I mean, maybe — well, I take that back. I read through these a little bit ago. I don't remember you making that argument. Well — You made many arguments in many — in many, you know, successive rounds of briefing. I don't remember that one. I just — is there some problem with it? Is that why you didn't put it — No, I don't think that's — I don't think that's right. I mean, I don't think there's a problem with it. I mean, I think that a 3582 C-2 proceeding is statutorily limited by Congress to the extent that by the express limitation of relief, you can reduce imprisonment and nothing else. That's my point. You don't get — if you don't have the power anymore to reduce the term of imprisonment, the 3582 C-2 proceeding just disappears. There's nothing else to do. And that's exactly why this is different on remand in Judge Canby's question, because the district court on a 2241, they have statutory authority to — To do all sorts of things. Look, all the district court can do is — The court on remand couldn't — the court couldn't entertain a motion under 38 — 3583? Well, if they can do that, they can do that regardless. They could be doing that now while this — you know, the defense could have filed this. And let me just say, at a minimum, as key — as the Second and Fifth Circuit cases and the Sixth Circuit case also shows, you know, the defendant is so far from — from being able to rebut mootness here because he hasn't even made the arguments about why his conduct on supervised release, now that he's been on a whole two months, has — would merit a reduction in the future. So I think that's — Well, I think the theory of the — of Gunderson and Mujahid is that somebody who has discretion to lessen his term of — or changes conditions of supervised release would be influenced by the equity that he spent longer than he should have in confinement. I mean, I think that's the theory. He might be — the judge in this case might be influenced, I suppose. But let me point out — But, you see, you don't gain much. You're arguing that there's going to be a hypothetical question. Did he really spend more time than necessary? And it's all over now, so it's kind of hypothetical. The same hypothetical question will exist if he goes in under 3583 and says, my term should be lessened because I served longer than I should have, and then he's going to have to try to prove exactly what he's going to try to prove in this case. And then the district court would have a case in controversy, which this court does not have, because the district court's decision on that issue would affect its — the district court would then be deciding, terminate or not terminate, whereas this court is issuing a purely advisory opinion. What do you do with Gunderson? Yeah. Gunderson is an — Gunderson says, well, we don't need to worry about early release from the drug program because E2 is there, and that would authorize early release. Right. Well, first of all — It may be wrong, again, but tell me how you get around it. As Judge Watford has pointed out, there's a difference in the text between extending the term. That's what E2 says. You can extend the term of supervised release or reduce the conditions, and there's a difference between the term and the conditions. Having said that, certainly in Gunderson, the first thing is that there was no — that was a felony possession case. There's no mandatory minimum supervised release. No, that's your second argument. And I — and we're — And my time is over. We're going to let you get to it. But just on the E2 point, doesn't Gunderson deal specifically with E2? Gunderson says offhand that that could — that that could be done. Allen is the case that gives the reason. You say lots of things offhand, but it appears to be the whole thing. 2241. I know. It's a 2241 case with no mandatory minimum, which is a significant difference. So tell me about your mandatory minimum. Well, the point on the mandatory minimum is the following. Congress's point when they impose a mandatory minimum is to tie judges' hands. Judges know that. That's why judges don't like mandatory minimums. But it's really the reason Congress does it. It does not make sense to say that Congress would have tied the hands in one respect saying for, or in some cases, five years. In all kinds of cases, drug cases and child sexual abuse cases, for instance, are mandated. Here are the handcuffs. But here's the key, and you can get out — and you can get out in 20 percent of the time, you know, change five years to one year. And the reasoning on this is supervised release is a very different function than imprisonment. Johnson, the Supreme Court in Johnson, says this. In supervised release, the concern is you're trying to reintegrate someone. You're giving them support services in the drug context, including drug testing, which is very important for drug offenders. And Congress made a firm judgment, which — Well, hang on. But it's via the notwithstanding clause? That's the — your whole argument rests on the insertion of that notwithstanding clause? Frankly, Your Honor, Spinelli was wrong when it was — And Gunderson was wrong and — Well, but Spinelli got out of this circuit. I don't need to — Right. Spinelli doesn't need to be followed by this Court. And it's, you know, one circuit court decision is not necessarily — No, but I think your answer to Judge Watford's question is yes, that you think that Congress — do you do think that Congress meant something by removing the notwithstanding clause? No. I think — frankly, I think it was clear already in the statute when they imposed the mandatory minimum. When they say you have to have five years for this specific offense, that you cannot then say that a general — you know, the specific controls over the general. And — It's nothing inconsistent about saying we want you to — it's mandatory that you impose an initial sentence of five years, but if after a year, boy, this person has turned their life around, of course we want you to have the discretion to not waste taxpayer money continuing to supervise them. There's nothing inconsistent about those two. Your argument seems to me has to be that when the notwithstanding clause was inserted and it referenced all of 3583 and didn't break it down by a subsection, that that somehow swept the discretion that otherwise existed completely off the table. It certainly clarified the point. And, you know, that's our — Do you have a case anywhere in the country that adopts that position? No, Your Honor. And frankly, no circuit court has considered the issue since — since Benelli. So no circuit court has considered the issue after Congress clarified. I'll urge you to look, though, at 841, 21 U.S. Code 841. And I see I'm — I believe I'm over my time. You are. You finished your point, though. Okay. So the point is that no circuit court has considered the issue. But even in 841, Congress is very specific. They said, here are mandatory minimum imprisonment sentences, no suspended time, no parole. They include that. Then they say, here's a mandatory supervised release sentence. Then they say, notwithstanding any other provision of 3583, not just the termination provision, not just — not just the imposition provision, but the whole thing. And that binds district courts, which district courts don't necessarily like, but Congress can do. And beyond that, it — at the very least, it would be a grave factor which makes it all the more speculative that a district court would start reducing sentences. Now — Let me stop you there. But I just want to — do you guys have questions on the merits for government counsel? I know. Okay. We're going to cut you off there. We understand the argument. Okay. We'll — yeah, your time is up. Okay. Thank you. Thank you. And we will give two minutes for rebuttal time to defense counsel. Two minutes. I'm looking at 21 U.S.C. 841, and it says very clearly, impose. It uses the word impose. So it does say, notwithstanding section 3583 of Title 18, any sentence under the subsection shall, blah, blah, blah, impose a term of supervised release of at least X years. It says include, not impose. But that doesn't affect your argument, I think. The clause you're talking about says include. We must be reading a different clause that says impose here. Any sentence imposed under the subparagraph shall include a term of — that's what I was looking for. I think you — do you think the impose was in your blah, blah, blah, or include was in your blah, blah, blah? In 841, it says shall impose a term of supervised release of at least X years. Which one are we reading? I'm in — God, there's so many subdivisions. This — I'm in a paragraph that has a little — it's a little, you know, VIII. Is that the wrong amount? VIII, five grams of more. Yeah. Is that the wrong — shall be sentenced to a term of imprisonment, which may not be less than, and if any person — Well, where are you reading from? I'm reading that paragraph, but at the very end of it, it says — oh, my dear, look at that. There are two different ones. Include. And over here it says impose. Does it make a difference to your argument? No. Okay, so — I just want to make sure we're on the same page. That's what I was trying to say a minute ago. We all agree that it has to include and the judge has to impose it. Right. So tell us why that makes no difference. Sorry. It's quite different, though, to say that later on, as Judge Watford pointed out, if you're performing very well on supervised release, you could reduce that term of supervised release. And so the fact that they added notwithstanding blah, blah, blah — I'm sorry. I keep saying that. Notwithstanding 30 Title 3583. Right. It shall include. It doesn't change the fact that they can still reduce that term. The fact that no other court has addressed its finale seems to indicate that there hasn't been an issue. And when Congress amended — Well, of course, most other courts think this is moot. Well, not in the context of actually reducing supervised release terms. It would not be moot in that context. Help me with this. Why would it be wrong to say Gunderson and Mujahid, those are 2241 cases. We've got a different statute here, 3582c2, that has this very limited conferral of authority that basically expires once the person is released from prison. Why couldn't we make that distinction? You could make the distinction. But 2241 — but Mujahid is very clear that it's just the possibility of a reduced term that preserves the jurisdiction. So it doesn't turn on whether or not a 2241 on remand someone would get reset. In fact, it does the opposite of that. It says he could get a shorter term under 3583 — no, 3583e2. Right. Which is exactly the same in the 3582c2 context. It doesn't say, well, 2241 has — So the citation in Gunderson to e2, in your view, makes it like this case. Yes. On all fours with this case. Okay. Thank you very much, counsel. We appreciate the arguments. This case — these cases, rather, will stand submitted. We will move to third case. Okay. We will skip over the second — the fourth case, I guess, on the calendar and move to Orange County Department of Education versus State of California Department of Education. Okay. Are you Ms. Floyer? Okay. You may come to the podium then. This is 15 minutes per side. Yeah. Good morning, Your Honors. Good morning. I represent the minor in this case, AS. And basically, from our perspective, where we're at now is a matter of justice, substantial justice. And I'd like to kind of go through the three points. I don't want to be redundant in my arguments because I feel like we've briefed very thoroughly the two venues. But the first issue, I think the underlying issue, is the prevailing party issue. And — Is that an issue as to the OA? Could you call it OAH in California, by the way? OAH fees? Yes, Your Honor. And — but it carries through — Okay. Well, let me ask a question. Okay. Because let's assume you were the prevailing party, as the ALJ found with — and we call it OAH. So if I call it — Okay. We call it OAH in Arizona for the Office of Administrative Hearings. So let's assume that you prevailed in the OAH proceedings. Why wasn't your attorney's fee application under the OAH proceedings barred?
judges: Canby, Watford, Hurwitz